UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

STEVEN LEE LOTTON, )
 )
    Plaintiff, )   Civil No. 11-258-ART
 )
v. )
 )
 )   **MEMORANDUM OPINION**
UNITED STATES OF AMERICA, )   **& ORDER**
 )
    Defendant. )
 )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Steven Lee Lotton has filed a pro se complaint against the "United States Military, United States Government," and "United States People" as well as several state governments and the Corbin Police Department. R. 1. He claims that they have violated his civil rights and committed torts against him over his lifetime, including:

1. That the Federal Bureau of Investigation and other federal agencies violated his civil rights by failing to investigate his injuries and help protect him, R. 14 at 3–4;
2. That, during his childhood, the federal government and various state governments failed to prevent him from being exposed to bar fights and similar incidents, R. 1-1 at 1, and failed to intervene when his parents left him in the back of a car while they went into a bar, R. 1-1 at 3;
3. That the United States military used mind control to torture him, his wife, his father, and his grandfather as well as to make Lotton force his wife to get an abortion, R. 1-1 at 1; R. 6 at 1, 3; and
4. That law enforcement from the Corbin Police Department brutally assaulted him, R. 1-1 at 1.

These events allegedly occurred from 1969 through the present. R. 1 at 3. As relief, Lotton wants (1) to file torture and attempted murder charges for "each day [he has] been alive," R. 1 at 2; (2) to have everyone who knew of these harms sentenced to death, R. 6 at 4; (3) to

be transferred to the "World Court" (formally known as the International Court of Justice), R. 1 at 2; (4) to renounce his citizenship and have the Court deport him, R. 1 at 2; and (5) to be awarded "trillions of dollars in damages," R. 16 at 2.  The United States has moved to dismiss Lotton's claims.  R. 13.

Lotton sincerely believes that he has suffered greatly at the hands of the United States and its citizens.  The Court wishes that it had the power to help him avoid future suffering.  Unfortunately, for the reasons provided below, this Court has neither the authority nor the ability to assist him on most of his claims.  All of Lotton's claims against the United States must be dismissed.  It appears, however, that Lotton has stated a claim for relief against the Corbin Police Department for allegedly "brutalizing" him and then refusing to provide him with medical attention.

### A. The Court Lacks Power to Grant the Non-Monetary Relief that Lotton seeks.

As a threshold matter, none of the non-monetary relief that Lotton seeks is available through the federal courts.  Lotton asks the Court to prosecute the individuals responsible for his suffering and sentence them to death, but federal courts do not have the authority to begin criminal prosecutions.  The power to criminally prosecute is committed to the executive branch.  *See, e.g.*, *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970) (holding that the investigation and commencement of criminal prosecution belongs to the Attorney General, not to federal courts).  It "is beyond the power" of this Court.  *Id.*

The same is true of Lotton's request to have Court deport him to another country: only the executive branch has the authority to begin deportation proceedings.  *Accord Reno v. Flores*, 507 U.S. 292, 305 (1993) ("[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches

2

of the Federal Government." (citation omitted)). Congress has, however, provided a process for renouncing one's citizenship: by "voluntarily performing" any one of a list of "expatriating acts" with the intention to give up United States citizenship. *See, e.g.*, *Fox v. Clinton*, __ F.3d __, 2012 WL 2094410, at *2 (D.C. Cir. June 12, 2012) (quoting 8 U.S.C. § 1481(a)). If Lotton is still interested in getting rid of his U.S. citizenship, he should contact the State Department.

Lotton also asks to be transferred to the World Court (formally known as the International Court of Justice). Yet federal courts do not have the power to transfer cases to courts outside of the United States. *See, e.g.*, *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 148 (2d Cir. 2000) (holding that when the "alternative forum" for a case is a foreign court, the statutes allowing federal courts to transfer the case to another court do not apply). Instead, if a foreign court is the more appropriate place for a plaintiff's claims, then the federal court should dismiss the case so that the plaintiff can bring his lawsuit in the foreign court. *See, e.g.*, *Rustal Trading U.S., Inc. v. Makki*, 17 F. App'x 331, 338 (6th Cir. 2001) (upholding the dismissal of a plaintiff's case when a foreign court was the more appropriate venue for the plaintiff's claims). If Lotton believes he can bring some of his claims in a foreign court, he is free to try. The Court, however, lacks the authority to transfer his case to a foreign jurisdiction or to grant any of the other non-monetary relief that Lotton seeks.

### B. The Court Lacks Power to Hear Lotton's Claims Against Federal Agencies or the United States Itself.

The Court is also powerless to hear Lotton's claims against the United States and various federal agencies. The United States, including its agencies, are immune from all

lawsuits except those to which the United States consents. *See, e.g.*, *Nuclear Trans. & Storage, Inc. v. United States*, 890 F.2d 1348, 1352 (6th Cir. 1989). Lotton alleges that various federal agencies, including the United States Attorney's Office for the Eastern District of Virginia and the FBI, have failed to investigate his injuries and help stop his suffering. *See* R. 14 at 4. But the United States has not consented to be sued on these civil rights claims. *See, e.g.*, *Fagan v. Luttrell*, 225 F.3d 658, at *3 (6th Cir. 2000) (unpublished table decision).

In response, Lotton argues that the United States is not immune from suit because it is responsible for his injuries. *See* R. 16 at 2. Sovereign immunity, however, applies regardless of how bad Lotton's injuries may be. Before the United States was formed, no English subject could sue his government because "the king or queen, as the ultimate source of authority, could do no wrong and should not be disturbed in the exercise of his or her sovereign powers." 14 Charles A. Wright et al., Federal Practice & Procedure: Jurisdiction and Related Matters § 3654 (3d ed. 2012). The states—and eventually the federal government—borrowed this idea of sovereign immunity when they formed the United States. *Id.* Still, for the first half of the nineteenth century, the United States did not consent to be sued on any claims for money damages; the "only recourse available to private claimants was to petition Congress for relief." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). No matter how greatly a plaintiff may have been injured by the federal government during that period of time, he was unable to sue the United States until Congress enacted the first waiver of sovereign immunity in 1887. Act of March 3, 1887, ch. 359, 24 Stat. 505. Thus, even if the United States were to purposefully violate all of Lotton's civil rights, he still could not

sue the United States itself or any federal agencies because the government has not consented to be sued for civil rights claims.

### C. The Court Must Dismiss Lotton's Claim that Federal and State Governments Failed to Protect Him During His Childhood.

Because the federal and state governments did not have a duty to protect Lotton from his childhood abuse, this claim must also be dismissed. There is "generally no constitutional duty on the part of government officials to protect members of the public against harm inflicted by third parties." *O'Brien v. Maui Cnty.*, 37 F. App'x 269, 271 (9th Cir. 2002) (citing *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 196–97 (1989)). To be sure, there are two exceptions to this rule: "(1) when the state has a special relationship to the victim, and (2) when the state creates the danger that led to the victim's harm." *Hudson v. Hudson*, 475 F.3d 741, 745 (6th Cir. 2007) (citing *Jones v. Union Cnty.*, 296 F.3d 417, 428 (6th Cir. 2002)). For example, if a state imprisons a criminal defendant or involuntarily commits someone to an institution, then the state has created a special relationship with that person and must "assume some responsibility for his safety and well-being." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 856 (5th Cir. 2012) (en banc). Or if police encourage a group of skinheads to assault an individual at a political rally and assure the attackers that they will not be arrested, then the state has a duty to prevent the attack because it actively facilitated the victim's injuries. *See Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993), *abrogated on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

Unlike those two examples, however, Lotton does not assert that the federal or state governments had taken him into its custody involuntarily during these childhood incidents or that the United States had a hand in creating the risk that these childhood incidents would occur.  *Cf. DeShaney*, 489 U.S. at 191–93 (holding that a county social services department had no duty to prevent a father from beating his four-year-old son even though a pattern of abuse had been reported to social services months beforehand).  These claims must therefore be dismissed.

### D.  Lotton's Claims Based on Mind Control Must be Dismissed.

The rest of Lotton's claims against the United States—mind-control-based allegations for monetary damages—meet a similar fate.  Even if the Court construes these allegations as claims under the Federal Tort Claims Act, the Court must dismiss these claims because they are factually implausible.  *See Premo v. United States*, 599 F.3d 540, 544 (6th Cir. 2010) ("The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances.'" (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962))).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Bartholomew v. Blevins*, 679 F.3d 497, slip op. at 3 (6th Cir. 2012) (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Of course, a pro se plaintiff's complaint is held to a "less stringent standard" than one prepared by an attorney.  *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).  For example, an inmate's complaint alleging that a prison physician failed to treat his injuries is sufficiently plausible to avoid dismissal.  *E.g.*, *Barnett v. Luttrell*, 414 F. App'x 784, 789 (6th Cir. 2011).  So, too, is a state employee's claim that he was fired in retaliation

6

for exercising his First Amendment right of free speech. *E.g.*, *Paige v. Coyner*, 614 F.3d 273, 275 (6th Cir. 2010).

Even when Lotton's complaint is "liberally construed," *Martin*, 391 F.3d at 712, however, his story fails to state a claim on which relief can be granted. Every United States Court of Appeals—including the Sixth Circuit, which this Court must follow—has upheld the dismissal of claims based on mind control because mind control is not plausible given the human race's current technological capabilities. *See, e.g.*, *Abascal v. Jarkos*, 357 F.App'x 388, 390 (2d Cir. 2009) (affirming the dismissal of claims based on mind control as "clearly baseless" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))); *Jamison v. Costco Wholesale*, 280 F. App'x 738, 740 (10th Cir. 2008) (affirming the dismissal of claims based on mind control because they "rise to the level of the irrational or the wholly incredible" (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992))); *Gale v. Williams*, 154 F. App'x 494, 495 (7th Cir. 2005) (affirming the dismissal of such a claim as an "inconceivable fantasy") *Moyer v. IBM Corp.*, 81 F. App'x 662, 662 (9th Cir. 2003); *Burnes v. Clinton*, 238 F.3d 419, 2000 WL 1800510, at *1 (6th Cir. 2000) (affirming the dismissal of claims that government officials tortured the plaintiff via mind control); *see also Graves v. Cohen*, 238 F.3d 421, 2000 WL 1720647, at *1 (6th Cir. 2000) (upholding the dismissal of claims that the Pentagon developed and released the AIDS virus on the American public). Consequently, the Court must dismiss the rest of Lotton's claims against the United States.

### E. Lotton's Allegation of Police Brutality by the Corbin Police Department Is Not Dismissed.

In addition to his claims against the United States, federal agencies, and various state governments, Lotton also alleges that he is the victim of police brutality. He claims that law

7

enforcement from the Corbin Police Department in Corbin, Kentucky, tazed him, handcuffed him, "slammed" him to the floor face-first, kneed him in the chest, and "slammed" his head on a car before taking him to the police station. R. 14 at 4. Upon arrival at the station, Lotton says, the police dragged him out of the car and "slammed" him face-first onto the pavement before using "his back as a step." R. 14 at 4. According to Lotton, the police then refused to provide him with any medical attention for his injuries despite his repeated requests. R. 14 at 4.

Construing his complaint liberally and taking his allegations as true, as the Court must, these allegations appear to state a claim for relief under 28 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment. *See, e.g., Schreiber v. Moe*, 596 F.3d 323, 331–32 (6th Cir. 2010) ("'[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard . . . .'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))). At this time, the Court does not have any information warranting dismissal of this claim. Consequently, the Court will direct the United States Marshals Service to serve the Corbin Police Department with Lotton's complaints, a summons, and a copy of this Order. *See* Fed. R. Civ. P. 4(c)(3); *see also id.*, Notes of Advisory Committee on 1993 Amendments to Rules, subdiv. (c) ("The court remains obligated to appoint a marshal, deputy, or some other person to effect service of a summons in two classes of cases specified by statute: actions brought in forma pauperis or by a seaman."). Once the Corbin Police Department is served, it will respond to Lotton's allegations. *See* Fed. R. Civ. P. 12(a).

Accordingly, it is **ORDERED** that:

(1) The United States' motion to dismiss, R. 13, is **GRANTED**. Lotton's claims against the United States in his complaint, R. 1; R. 1-1, amended complaint, R. 6, second amended complaint, R. 9, and accompanying letters, R. 14; R. 16; R. 18; R. 19, are **DISMISSED WITH PREJUDICE**. The Court will enter judgment in this case after all claims against all defendants have been resolved.

(2) The Clerk shall **TERMINATE** the United States of America as a defendant in this matter, **ADD** the Corbin Police Department as a defendant, and **RENAME** the action accordingly on the Court's docket.

(3) The Court **APPOINTS** and **DIRECTS** the United States Marshals Service to serve Lotton's complaint, R. 1, his attached statement, R. 1-1, his first amended complaint, R. 6, his second amended complaint, R. 9, his response, R. 16, his accompanying letters, R. 14; R. 18; R. 19, a summons, and a copy of this Order upon the Corbin Police Department in Corbin, Kentucky.

This the 21st day of June, 2012.



Signed By:
*Amul R. Thapar* AT
United States District Judge